# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JOSHUA P. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:18-cv-00227 |
| | ) | |
| CHEATHAM COUNTY JAIL and SHERIFF BREEDLOVE, | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Joshua P. Thompson, a prisoner formerly confined in the Cheatham County Jail and currently incarcerated at the Bledsoe County Correctional Complex in Pikeville, Tennessee,[1] has filed this pro se civil rights action under 42 U.S.C. § 1983 (Doc. No. 1), along with an application to proceed in district court without prepaying fees or costs. (Doc. No. 2.) The case is before the Court for a ruling on the application and for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I.     Application to Proceed *In Forma Pauperis*

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Such an application to proceed *in forma pauperis* (IFP) must be accompanied by a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official

---

[1] Plaintiff filed a notice of his relocation from the Cheatham County Jail on March 29, 2018. (Doc. No. 4.)

of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Plaintiff's application does not include the required trust fund account certification. However, in the section of his application where this certification is to be made, Plaintiff states that his jailors "refused to complete this part for me or give me a print out of trust fund." (Doc. No. 2 at 2.) He further states that: "The one's over comissarry [sic] said they never got my request and sometimes the requests were intercepted. They've done all they can to keep me from filing this[.]" (*Id.*)

If a jail does not maintain inmate trust fund accounts, or if jail officials refuse to cooperate with an inmate's efforts to get his application notarized and his inmate account statement certified, the inmate may submit a signed statement detailing his attempts to meet these statutory requirements in lieu of a certified inmate trust fund account statement. *See Michael Kilpatrick v. James O'Rouke*, No. 3:16-cv-01840 (M.D. Tenn. 2016) (Sharp, J.) (Doc. No. 3 at 1–2). In light of Plaintiff's statements concerning his unsuccessful attempts to obtain a certified inmate trust fund account statement from the Cheatham County Jail (which appear on the same page as his signed declaration that his allegations of poverty are true), and in view of his recent transfer from that facility, the Court finds that his IFP application is adequately supported under 28 U.S.C. § 1915(a)(2).

Because it is apparent from Plaintiff's submission that he lacks the funds to pay the entire filing fee in advance, his application to proceed IFP is **GRANTED**. Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350.00 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28

U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the Warden of the Bledsoe County Correctional Complex to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II.     Initial Review of the Complaint

### A.     PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B. Section 1983 Standard

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations of the Complaint

Plaintiff alleges he was deprived of mental health care by a qualified provider during his confinement as a pretrial detainee at the Cheatham County Jail. (Doc. No. 1 at 1, 5.) He alleges that he had been receiving a disability check on account of his mental illness prior to his confinement, and that his treating psychiatric nurse practitioner faxed his treatment records to the jail, establishing his diagnoses of "Bipolar I disorder, Anxiety disorder, severe anxiety panic

disorder, PTSD, Hypertensive disorder, and viral Hep[atitis] C." (*Id.*) He alleges that he has several medications that he has to take, but which were not given to him at the jail. (*Id.*) He further alleges as follows:

> I'm supposed to be screened within 48 hours by a [qualified] p[sych]iatric provider before I was moved to G.P. (Didn't happen) They have two nurses and a (LPN) that comes once a week, neither of the 3 are [qualified] in p[sych]iatry. After 35 days they finally gave me one pill (risperdol) its for (paranoid [schizophrenia]) I'm not that and they are not [qualified] to change my medication by law. My family drove 3 hours to bring my meds after they asked me to get them 4 different kinds. They accepted them, then refused to give them to me. Then nurse Sabrina told my mother I couldn't have narcotics. There's not one narcotic in the bunch. . . . They have people here taking (hydol) and other strong [psychiatric] meds a lot stronger than mine, they don't even know where they are at. Its clearly discrimination of some kind against me[.]

(*Id.* at 5–6.)

Plaintiff alleges that he filed grievances on January 12, 17, 19, 28, and 31 of this year, and that all grievances were marked "grievance substan[t]iated" without holding any grievance hearing. (*Id.* at 6.) His complaint also indicates that the jail responded to his grievances by stating that "Medical has policies they must follow & if they say I need certain meds I'll get them." (Doc. No. 1 at 5.)

Plaintiff alleges that "TCA 1400-01-13 Medical Services (8)(9)(10)(12)(18)(21) and (23) all apply to [his] case." (*Id.* at 6.) He claims that he has "been suffering since Jan. 3, 2018," and seeks one million dollars in damages. (*Id.* at 7.)

### D. Analysis

Plaintiff's allegation that he was denied appropriate medical care implicates his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due Process Clause from conduct that the Eighth Amendment would prohibit as against "individuals who have been tried, convicted, and

sentenced." *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016). The Sixth Circuit "has made clear that, under the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.'" *Id.* (quoting *Thompson v. Cty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994)). "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle*, 429 U.S. at 104, 105) (internal quotation marks omitted). "For this reason, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983," *id.*, whether the prisoner is a convict proceeding under the Eighth Amendment or a detainee proceeding under the Fourteenth Amendment.

In order to succeed in bringing a deliberate indifference claim in the medical context, Plaintiff must allege the deprivation of a "sufficiently serious" medical need by a Defendant who acted with a "sufficiently culpable state of mind." *Id.* at 367–68 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff's allegations that his outside mental health provider faxed his treatment records to the jail; that he did not receive any medications to treat his disabling bipolar and anxiety disorders for 35 days; and, that he was thereafter given "one pill" that had not previously been prescribed to treat his mental disorders, sufficiently allege the deprivation of a serious medical need. *See id.* at 368 ("Our precedents make it clear that neglecting a prisoner's known medical needs may constitute deliberate indifference. Even relatively short periods of delay or neglect have sufficed."); *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006) (holding that Constitution protects against deliberate indifference to serious mental health needs) (citing, e.g., *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).

It is a somewhat closer question whether Plaintiff has sufficiently alleged that he was so

6

deprived by a proper Defendant acting with the requisite culpability. Plaintiff's complaint names two Defendants: Sheriff Breedlove and the Cheatham County Jail. (Doc. No. 1 at 1, 2.) The Cheatham County Jail, "like any other jail or workhouse, is a place; it is not a 'person' that can be sued under 42 U.S.C. § 1983." *Tucker v. Salandy*, No. 3:17-CV-00671, 2017 WL 2438401, *2 (M.D. Tenn. June 6, 2017) (citing cases). Plaintiff thus fails to state a claim against the Cheatham County Jail.

As for Sheriff Breedlove, he is not alleged to have been personally involved in Plaintiff's medical care, but is sued in his official capacity only. (Doc. No. 1 at 2.)[2] The suit against him is therefore the equivalent of a suit against Cheatham County, the governmental entity he represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). While counties and other municipal defendants are "persons" subject to suit under Section § 1983, municipal liability may only be established if the plaintiff's harm is alleged to have been caused by the execution of an official policy or custom of the municipality, rather than simply the misdeeds of municipal employees. *Id.* at 814–15. "A plaintiff seeking to impose liability under § 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." *Burns v. Robertson Cty.*, 192 F. Supp. 3d

---

[2] Plaintiff affirmatively indicates that he is suing Sheriff Breedlove in his official capacity, and does not indicate whether or not he is pursuing an individual capacity claim. (Doc. No. 1 at 2.) Sheriff Breedlove is not specifically mentioned in the complaint's factual allegations, which simply refer to the wrongdoers as "they" after noting that the response to his grievances had been that "Medical has policies they must follow & if they say I need certain meds I'll get them." (Doc. No. 1 at 5–6.) In his request for relief, Plaintiff states as follows: "Sheriff Breedlove I want him to follow the law when it comes to inmates with mental illnesses[.] Cheat[h]am County Jail as a whole I want $1,000,000.00 from and I deserve every penny." (*Id.* at 7.) The Court does not find any indication in the complaint that Sheriff Breedlove is being sued individually. *See Moore v. City of Harriman*, 272 F.3d 769, 772–75 (6th Cir. 2001).

909, 920 (M.D. Tenn. 2016) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted).

The heart of Plaintiff's complaint is that he was denied medications and other specialized treatment which he needed to control the symptoms of his disabling mental disorders "after [his] mental health doctor in free world ha[d] faxed them paper work proving [his] mental health issues & diagnosis & that [he gets a] gov't check for these mental health issues." (Doc. No. 1 at 5.) As previously mentioned, Plaintiff stated in another section of his complaint that the response to his internal grievances was that "Medical has policies they must follow & if they say I need certain meds I'll get them." (*Id.*) Liberally construing these allegations of the pro se complaint together, the lack of attention to Plaintiff's serious mental health conditions is alleged to have been caused by adherence to the jail's policy on evaluating inmates' mental health needs, even though notice of a pressing need for treatment had been provided in the form of faxed medical records and a conversation between his family members and jail medical personnel. This is sufficient at this early stage of the litigation to state a deliberate indifference claim against the County. *See Burns v. Robertson Cty.*, 192 F. Supp. 3d at 921–22 (noting, in case of alleged improper screening for suicidal tendencies, that Sixth Circuit has consistently recognized prisoners' constitutional right to medical care once suicidal tendencies are known, and holding that county could be found responsible for knowing such tendencies and providing appropriate care based on three telephone calls made to the jail by prisoner's family members and attorney).

The jail's alleged failure to employ any health care providers who are qualified or specialize in psychiatry, and the failure to have such a qualified provider perform Plaintiff's mental health screening prior to moving him to the jail's general population, are also construed as stating a deliberate indifference claim against the County. These allegations identify staffing and

procedural policies which contributed to the failure to provide Plaintiff with any psychotropic medications for 35 days. "Systemic deficiencies in staffing which effectively deny inmates access to qualified medical personnel for diagnosis and treatment of serious health problems have been held to violate constitutional requirements. . . . [W]hen inmates with serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals, the system of care does not meet the constitutional requirements set forth by *Estelle v. Gamble*, supra, and thus violates the Due Process Clause." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762–63 (3d Cir. 1979), *cited with approval in Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006).

As to the provision of medications once Plaintiff's need for them was recognized, Plaintiff fails to allege that any harm he suffered was the result of a county policy or custom. In fact, he specifically alleges "discrimination of some kind" against only himself, since other inmates were receiving strong psychiatric medication. (Doc. No. 1 at 6.) To the extent that Plaintiff seeks to recover for this alleged discriminatory treatment against his individual care providers, he must amend his complaint to include claims against these individuals and name them as defendants.

**III. Conclusion**

As explained above, the Court finds that the complaint states colorable Section 1983 claims of deliberate indifference to Plaintiff's serious medical needs against Sheriff Breedlove in his official capacity, insofar as Plaintiff was denied appropriate care for his mental health conditions pursuant to policies in place at the Cheatham County Jail. These claims survive the required PLRA screening and shall proceed for further development of the record.

However, the complaint fails to state a Section 1983 claim upon which relief can be granted as to the claims against the jail itself. Therefore, the Cheatham County Jail and all claims against it are **DISMISSED WITH PREJUDICE**. 28 U.S.C. § 1915A.

Consequently, the Clerk is instructed to send Plaintiff a service packet (a blank summons and USM 285 form) for Sheriff Breedlove. Plaintiff will complete the service packet and return it to the Clerk's Office within twenty (20) days of the date of receipt of this Order.

Upon return of the service packets, **PROCESS SHALL ISSUE** to Sheriff Breedlove. Plaintiff is forewarned that the failure to return the completed service packet within the time required could jeopardize his prosecution of this action.

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

It is so **ORDERED.**

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE